**James EDDER, Petitioner,**

v.

**WORKERS' COMPENSATION APPEAL BOARD (GLENSHAW GLASS COMPANY, Inservco Insurance Services, Inc., Administrator for Westmoreland Casualty Co. in Liquidation and Pennsylvania Insurance Department Liquidations and Pennsylvania Insurance Department—Workers' Compensation Security Fund), Respondents.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Aug. 4, 2000.

Decided Jan. 18, 2001.

Richard F. Kronz, Pittsburgh, for petitioner.

No appearance entered for respondent.

Before DOYLE, President Judge, LEADBETTER, Judge and LEDERER, Senior Judge.

LEADBETTER, Judge.

James Edder appeals from the order of the Workers' Compensation Appeal Board (Board) that affirms the decision of the Workers' Compensation Judge (WCJ) granting the petition of employer, Glenshaw Glass Company, to modify benefits in light of its subrogation interest in the proceeds of Edder's settlement of a third party action. After review, we reverse.

Edder sustained an injury to his back on April 23, 1986 while working for Glenshaw Glass. As a result, he has not worked since June 9, 1986 and, pursuant to a notice of compensation payable, has received total disability benefits in the amount of $313.13 per week. In an effort to find relief from his back condition, Edder underwent surgery in February and November of 1987. Following the surgery in November, Edder's disabling back and leg pain continued and he experienced new problems in the form of persistent neurogenic impotence and incontinence. Edder and his wife sued the surgeon for malpractice in failing to diagnose and treat Edder's neurogenic dysfunction. They settled their claims in July of 1995 for the total amount of $850,000.00. Glenshaw Glass petitioned to modify benefits on the basis of its subrogation lien in the settlement proceeds under Section 319 of the Workers' Compensation Act.[1]

Following a hearing, the WCJ rejected the Edders' contention that the settlement proceeds are not subrogable because the malpractice action is unrelated to the disabling work injury. The WCJ also rejected the contention that $250,000.00 of the settlement proceeds compensated Mrs. Edders for her loss of consortium and, therefore, must be excluded from the subrogation lien. The WCJ confirmed a subrogation interest in the total amount of the proceeds. In modifying benefit payments, the WCJ used the gross method to calculate that Glenshaw Glass was entitled to a payment of $132,185.77 from the settlement proceeds and a grace period of 1,576

.64 weeks. Edder appealed to the Board, which found error in the WCJ's calculation under the gross method. The Board applied the net method to modify the WCJ's order.[2] As modified, the Board affirmed the WCJ's decision. Thereafter, Edder filed the present appeal. Edder argues that the settlement proceeds are not subrogable because they are derived from a cause of action for an injury that is unrelated to his work-related disability. He contends that the malpractice action was grounded on failure to diagnose and treat his neurogenic dysfunction and the settlement proceeds are compensation for that dysfunction, which is distinct from the disabling back condition.[3]

As our court recently explained in *Griffin v. Workers' Compensation Appeal Board (Thomas Jefferson University Hospital)*, 745 A.2d 61 (Pa.Cmwlth.1999), in order to obtain subrogation rights over a medical malpractice award, an employer must establish: (1) a causal connection between the original work-related injury and the subsequent event for which a third party is liable; and (2) that as a result of the subsequent event employer was compelled to pay compensation benefits greater than those required by the initial injury. *Griffin*, 745 A.2d at 64. The requirement that employer establish that it incurred an increase in liability under the Act flows logically from the equitable rationale underpinning the right of subrogation. An employer is entitled to subrogation in order to prevent double recovery by the claimant for the same injury, to ensure

---

1. Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 671, which provides in relevant part:

    Where the compensable injury is caused in whole or in part by the act or omission of a third party, the employer shall be subrogated to the right of the employe ... against such third party to the extent of compensation payable under this article by the employer. ...

2. The Board ordered an initial payment from settlement proceeds of $132,185.80 and a grace period of 2,032.26 weeks.

3. Edder also contends that employer has no right of subrogation in the $250,000.00 from the settlement of Mrs. Edder's claim for loss of consortium. In view of our determination that employer has failed to prove a right of subrogation in the proceeds of Edder's malpractice settlement, we need not address the issue concerning the claim for loss of consortium.

that employer is not required to pay for the negligence of a third party and to prevent a third party from escaping liability for his negligence. In keeping with this equitable rationale, in order to establish a right of subrogation the employer must show he is compelled to make payments by reason of the negligence of a third party. *Id.* at 64. *See also Sharkey v. Workers' Compensation Appeal Bd. (Sharkey's American Hardware)*, 744 A.2d 345, 347 (Pa.Cmwlth.1999).

■ Here, employer failed to prove that the settlement fund against which it sought subrogation arose from malpractice that caused or increased employer's liability under the Act. As the WCJ and the Board noted, employer presented no evidence to establish this fact. Indeed, in deposition testimony submitted by employer, the surgeon who treated Edder for his disabling back condition stated that despite surgery, Edder remained totally disabled by his original work-related back condition. In other words, there is no evidence that malpractice in the performance of the surgery or in the post surgical care aggravated the degree or duration of Edder's disability.

Accordingly, since employer failed to establish the second element of his burden of proof, we reverse.

### ORDER

AND NOW, this 18th day of January, 2001, the order of the Workers' Compensation Appeal Board in the above captioned matter is REVERSED.

The decision in this case was reached before the expiration of the appointment of Senior Judge LEDERER to the Commonwealth Court by the Supreme Court of Pennsylvania.